FILED

August 20 2013

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 12-0695

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 233

TIMOTHY E. WATTS,

     Plaintiff and Appellee,

  v.

HSBC BANK US TRUSTEE, ACE SECURITIES TRUST AND
REGISTERED HOLDERS OF ACE SECURITIES CORP.
HOME EQUITY LOAN TRUST, SERIES 2007-ASAP1,
ASSET-BACKED PASS-THROUGH CERTIFICATES,
DAVID A. MARION AND DEBRA E. MARION, husband and
wife, and ALL PERSONS UNKNOWN, CLAIMING OR WHO
MIGHT CLAIM ANY RIGHT, TITLE, ESTATE, OR INTEREST
IN, OR LIEN OR ENCUMBRANCE UPON THE REAL PROPERTY
DESCRIBED IN THE COMPLAINT, OR ANY PART THEREOF,
ADVERSE TO PLAINTIFF'S OWNERSHIP OR ANY CLOUD
UPON PLAINTIFF'S TITLE THERETO, WHETHER SUCH CLAIM
OR POSSIBLE CLAIM BE PRESENT OR CONTINGENT,

     Defendants and Appellants.

| | |
|---|---|
| APPEAL FROM: | District Court of the Nineteenth Judicial District,<br>In and For the County of Lincoln, Cause No. DV 11-73<br>Honorable James B. Wheelis, Presiding Judge |

COUNSEL OF RECORD:

     For Appellant:

          Mark C. Sherer; Mackoff Kellogg Law Firm; Dickinson, North Dakota

     For Appellee:

          Amy N. Guth; Attorney at Law; Libby, Montana

Submitted on Briefs: June 26, 2013

Decided: August 20, 2013

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1      HSBC Bank USA, N.A., as trustee on behalf of Ace Securities Corp., Home Equity Loan Trust, and for the registered holders of Ace Securities Corp. Home Equity Loan Trust, series 2007-ASAP 1, asset backed pass-through certificates (collectively "HSBC"), appeal from an order of the Nineteenth Judicial District Court, Lincoln County, denying HSBC's motion for summary judgment and granting summary judgment to Timothy E. Watts (Watts) in a quiet title action.[1]  We reverse.

## ISSUES

¶2      HSBC raised four issues on appeal.  However, we deem the following issue dispositive:

¶3      Did the District Court err in determining that the Marion debt to PrimeLending was no longer in the first priority lien position because the debt had been assigned to HSBC?

## FACTUAL AND PROCEDURAL BACKGROUND

¶4      On November 8, 2006, Watts sold real property located at 123 Meadow Lane in Eureka, Montana (Property), to David and Debra Marion (together "Marions").  The Marions financed the purchase of the Property with a loan from PrimeLending for $248,000 and a second loan from Watts in the amount of $62,000.  Watts signed a warranty deed, a trust indenture to secure his loan to the Marions, and a subordination

---

[1] M. R. App. P. 2(4) provides that "On motion of a party, or on the court's own motion, the caption of a pending cause may be modified to more accurately reflect the actual alignment or status of a party."  Because Watts was the plaintiff in the underlying action, we have modified the caption to accurately reflect the actual alignment of the parties.

3

agreement. The subordination agreement, signed by Watts and Marions, provided that Watts agreed to subordinate his loan to the PrimeLending loan. On November 15, 2006, the Marions signed a deed of trust to PrimeLending, a trust indenture in favor of Watts, and the subordination agreement. First American Title Company recorded the warranty deed, trust indenture, deed of trust, and subordination agreement on November 17, 2006.

¶5 On May 1, 2009, the Marions defaulted on the loan originating with PrimeLending. PrimeLending assigned its interest in the Marions' loan to HSBC on August 11, 2009. Charles J. Peterson (Peterson), acting as trustee for HSBC, executed a notice of trustee sale on October 13, 2009. Peterson mailed the notice of trustee sale to Watts by certified mail at Watts' address of record in Montana. The post office attempted service of the notice on October 21 and 27, 2009, but both attempts were unsuccessful. Peterson then published the notice of trustee sale for three consecutive weeks and posted the notice at the Property. Watts was living in New Mexico at the time and claims that he never received any notice concerning the Marions' default on the HSBC loan or the HSBC trustee's sale. On February 22, 2010, Peterson held the trustee's sale. HSBC purchased the Property for $260,000. HSBC recorded a trustee's deed on February 23, 2010.

¶6 The Marions also defaulted on the loan from Watts. Watts, who claimed to be unaware of the previous HSBC trustee's sale, recorded a notice of successor trustee on January 4, 2010, in anticipation of executing a foreclosure. Watts executed a notice of trustee's sale on May 28, 2010. Watts provided notice to HSBC of his foreclosure proceeding, but HSBC did not provide notice of its previous foreclosure or respond in

4

any way. On September 30, 2010, Watts held his own trustee sale and was purchaser of record. Watts then recorded a trustee's deed naming himself as the owner of the Property.

¶7 On March 22, 2011, after discovering that HSBC claimed ownership of the Property, Watts filed his complaint against HSBC, the Marions, and other parties claiming any interest in the Property. Watts sought to quiet title to the Property, and in the alternative, requested damages. HSBC answered the complaint and filed a counterclaim seeking to quiet title to the Property. On September 2, 2011, the District Court entered a default against the Marions. On August 26, 2011, HSBC filed its motion for summary judgment. The District Court denied HSBC's motion for summary judgment on January 18, 2012. On August 3, 2012, Watts filed his motion for summary judgment. The District Court granted Watts' motion for summary judgment on October 17, 2012. HSBC appeals.

## STANDARDS OF REVIEW

¶8 We review a district court's ruling on a motion for summary judgment de novo, applying the same criteria of M. R. Civ. P. 56 as the district court. *Mt. West Bank, N.A. v. Cherrad, LLC*, 2013 MT 99, ¶ 25, 369 Mont. 492, 301 P.3d 796; *Dubiel v. Mont. DOT*, 2012 MT 35, ¶ 10, 364 Mont. 175, 272 P.3d 66. Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." M. R. Civ. P. 56(c)(3).

## DISCUSSION

5

¶9 *Did the District Court err in determining that the Marion debt to PrimeLending was no longer in the first priority lien position because the debt had been assigned to HSBC?*

¶10 Watts argued, and the District Court agreed, that when PrimeLending assigned its interest in the deed of trust and promissory note to HSBC, HSBC lost its priority over Watts' previously subordinated lien on the Property because PrimeLending could not freely assign its rights under the subordination agreement to HSBC. The District Court noted that neither the Marions nor Watts consented to the assignment of any contractual rights or obligations to HSBC. Next, the District Court stated that HSBC had never claimed that it was an intended beneficiary of the subordination agreement. The District Court reasoned that even if HSBC had raised the issue, the language of the subordination agreement demonstrated that PrimeLending was an intended beneficiary but HSBC was not. After determining that Watts properly foreclosed on his trust indenture as the first priority lien holder, the District Court granted Watts' motion for summary judgment and declared Watts the due and lawful owner of the Property. The District Court's conclusions were in error.

¶11 Under Montana law, the assignee of a mortgage obtains all rights held by the original mortgage holder. This Court has long held that an assignment does not create a new lien. *Hull v. Diehl*, 21 Mont. 71, 79, 52 P. 782, 783 (1898). "Its sole office is to transfer from one person to another title to a mortgage lien already on the land, and its operation is of necessity limited to that purpose." *Hull*, 21 Mont. at 79, 52 P. at 783. "[T]he general rule in most states is that where a valid assignment of a mortgage has been

6

consummated with proper consideration, the assignee is vested with all the powers and rights of the assignor." *Mort v. U.S.*, 86 F.3d 890, 894 (9th Cir. 1996).

¶12    Since a mortgage assignee succeeds to all of the assignor's powers and rights, other jurisdictions have consistently held that an assignment of a mortgage does not affect its priority. *See Fannie Mae v. Kuipers*, 732 N.E.2d 723, 729 (Ill. App. 2d. Dist. 2000) ("Other jurisdictions have held under their respective state laws that an assignment of a mortgage does not affect its priority."); *Bank Western v. Henderson*, 874 P.2d 632, 636 (Kan. 1994) ("There is nothing in the statutes or case law which indicates that an assignment of a mortgage . . . somehow affects the priority of the mortgage."); *Finlayson v. Waller*, 134 P.2d 1069, 1072 (Idaho 1943) ("Upon the assignment of this mortgage, the assignee became vested with all the rights, powers and equities of the original mortgagee, and the mortgage in the hands of the assignee takes precedence over a lien which attached prior to the assignment but subsequent to the execution of the mortgage."); *Berger v. Baist*, 6 P.2d 412, 413 (Wash. 1931) ("A mortgage having once obtained priority by record does not lose its place by being held by anyone under an unrecorded assignment."); *Schelling v. Thomas*, 274 P. 755, 757-58 (Cal. App. 1st Dist. 1929) ("The assignee of a mortgage takes all the rights of his assignor, and if, in the hands of the assignor, it was entitled to priority over another mortgage . . . it has the same priority in the hands of the assignee."). Although Montana has not previously addressed this question, we adopt the rationale set forth in these cases.

¶13    As noted above, Watts signed a subordination agreement, subordinating his loan to that of PrimeLending. Under the foregoing rule, Watts did not gain priority over the

7

PrimeLending deed of trust by virtue of the assignment from PrimeLending to HSBC. PrimeLending assigned "all of its rights, title and interest in and to" the deed of trust and note to HSBC. HSBC, as the assignee of the trust deed from PrimeLending, succeeded to all powers and rights previously held by PrimeLending, which included the right of priority over Watts' subordinated trust indenture.

¶14 "An assignee of contract rights generally stands in the shoes of the assignor." *Credit Serv. Co. v. Crasco*, 2011 MT 211, ¶ 17, 361 Mont. 487, 264 P.3d 1061; *Massey-Ferguson Credit Corp. v. Brown*, 173 Mont. 253, 256, 567 P.2d 440, 441-42 (1977). Montana has long recognized the rule that rights arising from contracts between private individuals are assignable, and that non-assignability is the exception. *Winslow v. Dundom*, 46 Mont. 71, 82, 125 P. 136, 139 (1912). In the absence of a non-assignment clause, either party may generally make an assignment of rights under the contract. *Forsythe v. Elkins*, 216 Mont. 108, 113, 700 P.2d 596, 599-600 (1985). There was no non-assignment clause in the mortgage documents between the Marions and PrimeLending.

¶15 HSBC is entitled to stand in the shoes of PrimeLending and receive any benefits that PrimeLending was entitled to under the mortgage documents, including the subordination agreement. The Deed of Trust between the Marions and PrimeLending expressly provided, as is common in the industry, that PrimeLending could sell the note without prior notice to the borrower. Because no notice of transfer was required, clearly the transfer could occur without the consent of either the Marions or Watts. Our only remaining inquiry, therefore, is whether the subordination agreement conferred a first

priority lien position upon PrimeLending. The language of the document clearly demonstrates that it did so.

¶16 A subordination agreement dictates the priorities between existing interests. *Travelers Ins. Co. v. Holiday Village Shopping Ctr. Ltd. Pshp.*, 280 Mont. 217, 224, 931 P.2d 1292, 1296 (1996). The subordination agreement provided in pertinent part as follows:

> WHEREAS, it is a condition precedent to obtaining said loan from lender [PrimeLending] that said Deed of Trust last above mentioned [PrimeLending's deed of trust] shall unconditionally be and remain at all times a lien or charge upon the land hereinbefore described [Property], prior and superior to the lien or charge of the Deed of Trust first above mentioned [Watts' deed of trust]; and
>
> WHEREAS, Lender is willing to make said loan provided the Deed of Trust securing the same is a lien or charge upon the above described property [Property] prior and superior to the lien or charge of the Deed of Trust first above mentioned and provided that Beneficiary [Watts] will specifically and unconditionally subordinate the lien or charge of the Deed of Trust first above mentioned to the lien or charge of the Deed of Trust in favor of Lender; and
>
> WHEREAS, it is to the mutual benefit of the parties hereto that Lender shall make such loan to Owner [Marions]; and Beneficiary is willing that the Deed of Trust securing the same shall, when recorded, constitute a lien or charge upon said land which is unconditionally prior and superior to the lien or charge of the Deed of Trust first above mentioned.
>
> NOW, THEREFORE, in consideration of the mutual benefits accruing to the parties hereto and other valuable consideration, the receipt and sufficiency of which consideration is hereby acknowledged, and in order to induce Lender to make the loan above referred to, it is hereby declared, understood and agreed as follows:
>
> 1) That said Deed of Trust securing said Note [$248,000 PrimeLending loan] in favor of Lender, and any renewals or extensions thereof, shall unconditionally be and remain at all times a lien or charge on

the property therein described, prior and superior to the lien or charge of the Deed of Trust first above mentioned.

2) That Lender would not make its loan above described without this subordination agreement.

3) That this agreement shall be the whole and only agreement with regard to the subordination of the lien or charge of the Deed of Trust first above mentioned to the lien or charge of the Deed of Trust in favor of Lender above referred to and shall supersede and cancel, but only insofar as would affect the priority between the Deeds of Trust hereinbefore specifically described, any prior agreement as to such subordination including, but not limited to, those provisions, if any, contained in the Deed of Trust first above mentioned, which provide for the subordination of the lien or charge thereof to another Deed or Deeds of Trust or to another Mortgage or Mortgages.

¶17 Neither the deed of trust nor the subordination agreement contain any provisions restricting the lender's right of assignment. Further, the plain language of the subordination agreement demonstrates the parties' intent to subordinate Watts' trust indenture to the PrimeLending deed of trust. The subordination agreement effectively and firmly placed PrimeLending's mortgage interest ahead of Watts' interest in the Property.

¶18 Watts concedes on appeal that PrimeLending was an intended beneficiary of the subordination agreement entered between him and the Marions, but argues that HSBC was not an intended beneficiary and therefore cannot enforce the terms of the document. We disagree. As intended beneficiary, PrimeLending was entitled to enforce the terms of the subordination agreement. *Kurtzenacker v. Davis Surveying, Inc.*, 2012 MT 105, ¶ 20, 365 Mont. 71, 278 P.3d 1002; *Williamson v. Mont. PSC*, 2012 MT 32, ¶ 40, 364 Mont. 128, 272 P.3d 71. Because HSBC stepped into PrimeLending's shoes in all respects by virtue of the assignment, it assumed PrimeLending's rights as first lienholder as well as

10

its status as beneficiary of the subordination agreement. Watts cannot avoid the clear terms of the subordination agreement simply because a routine assignment occurred.

¶19 Accordingly, we conclude that the District Court erred in granting summary judgment to Watts. HSBC's deed of trust in the Property clearly is entitled to priority over Watts' trust indenture. We therefore reverse the entry of summary judgment in favor of Watts and remand for entry of judgment in favor of HSBC.

¶20 Reversed.

/S/ PATRICIA COTTER

We Concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ LAURIE McKINNON
/S/ BETH BAKER